UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CNS CORPORATION, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 2:10CV18 JCH |
| ) | |
| GLOBAL AEROSPACE, INC., ) | |
| ) | |
| Defendant(s). ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Global Aerospace, Inc.'s Motion to Dismiss or, in the Alternative, Stay this Litigation and Compel Appraisal, filed May 7, 2010. (Doc. No. 4). The matter is fully briefed and ready for disposition.

## BACKGROUND

On December 23, 2008, a 2004 Raytheon Premier 1, serial number RB-106 ("plane") belonging to Plaintiff CNS Corporation, slid off an icy runway in Lewis County, Missouri. (Plaintiff's Complaint for Declaratory Judgment and for Damages ("Complaint" or "Compl."), Doc. No. 1, ¶¶ 1, 8, 9). Plaintiff previously had insured the plane for $5,500,000 with Defendant. (Id., ¶¶ 1, 12; Broad Horizon Aviation Insurance Policy [1] ("Policy"), Doc. No. 1-1, P. vii). In exchange for premium payments by Plaintiff, Defendant agreed to pay for physical damage to the aircraft, including disappearance of the plane, with certain limitations. (Policy, P. 13).

---

[1] A copy of the insurance policy is attached to Plaintiff's Complaint. The Court may consider this and the parties' other exhibits without converting the instant motion to one for summary judgment, because the Court, "may consider some materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings." Little Gem Life Sciences, LLC v. Orphan Medical, Inc., 537 F.3d 913, 916 (8th Cir. 2008) (internal quotations and citations omitted).

After the accident Plaintiff had the plane inspected, with approval from Defendant, by Hawker Beechcraft, the manufacturer of the plane, located in Wichita, Kansas. (Defendant's Memorandum of Law in Support of its Motion to Dismiss or, In the Alternative, Stay This Litigation and Compel Appraisal ("Defendant's Memo in Support"), Doc. No. 5, P. 1). Hawker Beechcraft estimated the cost to repair the hull damage to be $3,341,763.26. (Id.; see also Hawker Beechcraft Proposal[2], Doc. No. 5-1, P. 2). Additionally Plaintiff, again with the approval of Defendant, had the engines inspected by Williams International. (Defendant's Memo in Support, P. 1). Williams International estimated the cost to repair to be $65,904.31 for one engine, and $55,041.43 for the other, totaling $120,945.74 in estimated engine damage. (Id.; see also Williams International Quotation[3], Doc. No. 5-2, PP. 1, 3). The parties thus agree the repair estimates totaled $3,462,709. (Compl., ¶ 15; Defendant's Memo in Support, P. 1).

In a June 23, 2009, letter to David Melton of Ozark National Life Insurance Company, one of the named insureds in the policy, Hawker Beechcraft representative Michael Sloan stated as follows:

> Chip Rappold of Hawker Beechcraft Services has forwarded the above referenced letter to me for response.
> 
> Hawker Beechcraft Services has provided its best estimate of the repairs required in order to return this aircraft to service. Neither Hawker Beechcraft Services nor the manufacturer, Hawker Beechcraft Corporation, can answer with 100% certainty the questions posed in your letter.
> 
> Chip Rappold stated in a letter to Ozark National dated May 12, 2009:
> 
> *"There is no question that Hawker Beechcraft can return RB-106 to a safe and airworthy condition. There is less certainty however, that doing so can be accomplished within the defined elements and estimated cost limits of the previously supplied proposal. This is driven primarily by the potential risk*

---

[2] A copy of the Hawker Beechcraft Proposal is attached to Defendant's Memo in Support as Exhibit A.

[3] A copy of the Williams International Quotation is attached to Defendant's Memo in Support as Exhibit B.

*of hidden damage not exposed through inspections thus far. While the goal would be to return the aircraft to service without any impairment going forward, it is not possible to make that determination until the specific detail of all completed repairs have been evaluated for limitations associated with the effort."*

The following observations have also been made by HBS and HBC regarding this aircraft:

\* The scope of the repair will require an external patch where the nose gear penetrated the fuselage; this patch will be visible to anyone walking around the aircraft, should they be comparing this aircraft to any other Premier aircraft.

\* The significant repairs due to this event that will be documented in the log book history of the aircraft are expected to have a negative impact to future value of this aircraft, especially when compared to other aircraft without damage history.

\* Standard and special inspections, plus increased inspection intervals are to be expected but will not be determined until the FAA reviews the final aircraft repair. This could provide additional operating expenses, but again until the repair is completed and an FAA determination is made, we have no way of knowing specifics nor can we estimate these.

\* Operational limitations to the overall aircraft envelope are another unknown possibility until the repair is completed, along with possible altitude restrictions. These restrictions could be a result of the aircraft not meeting Premier fleet RVSM (Restricted Vertical Separation Minimums) requirements due to the repairs; the aircraft might require a "one off" type approval for RVSM operations by the FAA.

In summary, the repair scope to this aircraft is significant and until the repair is completed no-one can determine the final FAA status of actual inspections and operational restrictions that might be placed on the aircraft for future operation. To say that the repairs to the aircraft will result in a negative resale value and additional operational costs going forward, are reasonable assumptions.

The aircraft can be returned to a safe and airworthy condition; however, other factors are certainly worth your careful review.

(Compl., ¶¶ 17, 18; Sloan Letter[4], Doc. No. 6-1 (emphasis in original)).

Given the warnings from Hawker Beechcraft, together with the advice of its own aircraft engineers hired to assess the damage to the plane, Plaintiff maintains the plane cannot be repaired, i.e., "restored into as good a condition mechanically, functionally and in appearance as before the loss." (Compl., ¶ 19). Therefore, on September 10, 2009, Plaintiff submitted to Defendant a proof of loss claiming the plane was a total loss, and requesting payment of $5,500,000, the insured value of the plane. (Id., ¶¶ 10-12, 19; Proof of Loss[5], Doc. No. 5-3).

Under the terms of the policy, the aircraft is a total loss if the cost to repair the physical damage, "equals or exceeds the insured value of the scheduled aircraft." (Policy, P. 23). Physical damage "means direct and accidental physical loss of or damage to the scheduled aircraft, spare engine, spare part or mechanics' tools, *but does not include loss of use or any residual decrease in value after repairs have been made*." (Id., P. 22 (emphasis added)). If the plane is found to be a total loss, then under the policy Defendant "shall pay the insured value of the scheduled aircraft..." (Id., P. 14). As relevant here, the policy also includes an appraisal clause that states as follows:

> If [Plaintiff] and [Defendant] fail to agree as to the cost to repair the physical damage, either may, within sixty (60) days after proof of loss is filed, demand an appraisal. In such event, [Plaintiff] and [Defendant] shall each select a competent appraiser, and the appraisers shall select a competent and disinterested umpire. The appraisers shall appraise the cost to repair the physical damage and failing to agree shall submit their differences to the umpire. An award in writing of any two (2) shall determine the cost to repair the physical damage. The [Plaintiff] and the [Defendant] shall each pay its chosen appraiser and shall bear equally the other expenses of the appraisal and the umpire. The [Defendant] shall not be held to have waived any of its rights by any act relating to appraisal.

---

[4] A copy of the Sloan letter is attached to Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss or, in the Alternative, Stay this Litigation and Compel Appraisal ("Plaintiff's Opp."), Doc. No. 6, as Exh. 1.

[5] A copy of the proof of loss letter is attached to Defendant's Memo in Support as Exhibit C.

(Id., P. 16).

On October 8, 2009, Defendant paid Plaintiff the $3,462,709 due under the Hawker Beechcraft and Williams International estimates. (See November 4, 2009, Adam Martz Letter[6], Doc. No. 5-4). Defendant agreed to make further payments based upon the presentation of repair invoices from Hawker Beechcraft or Williams International, for additional compensable damage discovered during the repair process. (Id.). Finally, because according to Defendant the parties have not agreed as to the "cost to repair," Defendant invoked the policy's appraisal clause. (Id.).

Plaintiff responded by filing the present action for declaratory judgment and for damages on March 9, 2010. (Compl., Doc. No. 1). In Count I, Plaintiff alleges the appraisal clause is inapplicable, as the plane cannot be repaired and thus is a total loss. (Id., ¶¶ 22-26). In Count II, Plaintiff alleges that even if it otherwise is applicable, the appraisal clause constitutes an agreement to arbitrate within an insurance agreement, and thus is invalid under Missouri's Uniform Arbitration Act. (Id., ¶¶ 28-29). In Count III, Plaintiff alleges the appraisal clause is void because it lacks mutuality of obligation. (Id., ¶¶ 31-34). Finally, in Count IV Plaintiff alleges breach of contract and vexatious refusal to pay, under Mo. Rev. Stat. §§ 375.296 and 375.420. (Id., ¶¶ 36-45). Plaintiff seeks a judgment declaring the appraisal clause inapplicable to this dispute, or if applicable, void. Plaintiff also seeks a judgment for the insured value of the plane, less any amounts already paid to Plaintiff, statutory penalties for vexatious refusal to pay, attorney fees, interest and costs.

As stated above, Defendant filed the instant Motion to Dismiss on May 7, 2010, asserting Plaintiff's Complaint must be dismissed without prejudice for failure to meet a condition precedent to filing suit, i.e., compliance with the appraisal clause. (Doc. No. 4). In the alternative, Defendant

---

[6] A copy of the Martz letter is attached to Defendant's Memo in Support as Exhibit D.

requests that the Court order Plaintiff to participate in the appraisal process, and stay this litigation pending completion of such process. (Id.).

## LEGAL STANDARD

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a). In ruling on a motion to dismiss, the Court must view the allegations in the Complaint in the light most favorable to Plaintiff. Eckert v. Titan Tire Corp., 514 F.3d 801, 806 (8th Cir. 2008) (citing Luney v. SGS Auto. Servs., Inc., 432 F.3d 866, 867 (8th Cir. 2005)). Additionally, the Court, "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted). A motion to dismiss must be granted, however, if the Complaint does not contain, "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L.Ed.2d 929 (2007) (abrogating the "no set of facts" standard for Fed.R.Civ.P. 12(b)(6) found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). While a Complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citation omitted); Huang v. Gateway Hotel Holdings, 520 F.Supp.2d 1137, 1140 (E.D. Mo. 2007). Stated differently, to survive a motion to dismiss, the Complaint's factual allegations, "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citations omitted).

## DISCUSSION

Under Missouri state law, insurance policies are treated as contracts, and the rules of contract construction apply. See United Fire & Cas. Co. v. Gravette, 182 F.3d 649, 658 (8th Cir. 1999); Lupo v. Shelter Mut. Ins. Co., 70 S.W.3d 16, 19 (Mo.App. 2002). Thus, "'any claim or suit by either party must be based upon the policy issued.'" United Fire & Cas. Co., 182 F.3d at 658 (quoting Gabriel v. Shelter Mut. Ins. Co., 897 S.W.2d 119, 120 (Mo.App. 1995)). The "'plain, ordinary, and usual meaning of a contract's words are used, and the whole document is considered'" when analyzing a claim. Kelly v. State Farm Mut. Auto. Ins. Co., 218 S.W.3d 517, 522 (Mo.App. 2007) (quoting Jackson County v. McClain Enters., Inc., 190 S.W.3d 633, 640 (Mo.App. 2006)).

## I. Is The Appraisal Clause Applicable To The Parties' Dispute?

In its Motion to Dismiss or Stay, Defendant maintains that because the parties' disagreement centers on the cost of repairs, the Policy mandates that the amount of loss be set by appraisal. (Defendant's Memo in Support, PP. 5-8). Plaintiff counters that the appraisal provision is inapplicable, because the plane cannot be repaired. (Plaintiff's Opp., PP. 2-4). In other words, Plaintiff asserts a complete repair is unobtainable as even Hawker Beechcraft, the manufacturer of the plane at issue, acknowledged the impossibility of restoring the plane to the point where its function, appearance, and value are substantially the same as they were immediately prior to the accident. (Id., P. 2; see also Id., P. 3 ("What [Defendant] apparently proposes, therefore, is not that [Plaintiff] will be provided with substantially the same aircraft as before the loss, but instead, [Plaintiff] will receive a very costly, unmarketable, and patched-up version of the aircraft, which will not fly as fast, as high or as far as the aircraft it originally had insured.")). Plaintiff thus maintains the dispute is one of coverage rather than value of damages, as it is outside the scope of an appraisal to consider post-repair issues such as alterations in physical appearance and operational limitations. (Id., PP. 3-4).

Upon consideration the Court rejects Plaintiff's contention, as the Policy provides only for repairs of physical damage, clearly defined to exclude "loss of use or any residual decrease in value after repairs have been made." (Policy, PP. 13, 22). Diminution in use, appearance, and/or value thus does not factor into the analysis, and so the dispute here (to the extent one still remains[7]) centers around the "cost to repair" under the Policy. See Lupo, 70 S.W.3d at 21 ("Hence, under Missouri case law diminished value is not a covered loss in a breach of contract action where full and adequate repairs have been made."); see also Camden v. State Farm Mut. Auto. Ins. Co., 66 S.W.3d 78, 83 (Mo.App. 2001) ("Insurer may choose to repair the damaged vehicle, and where there is no allegation of inadequate repairs, the policy limits Insurer's liability to the cost of said repairs. Therefore, in the case at bar, we find inherent diminished value is not a covered loss in the policy."). Defendant thus is entitled to invoke the appraisal clause, absent any other bar to its application.

## II. Is The Appraisal Clause An Arbitration Clause And Therefore Unenforceable?

Plaintiff next asserts that, even if the appraisal clause applies, it is essentially an arbitration clause within a contract for insurance, which is invalid under Missouri's Uniform Arbitration Act. (Compl., ¶ 28; Plaintiff's Opp., PP. 4-6). Under the Missouri Uniform Arbitration Act, arbitration clauses in insurance contracts are unenforceable. Mo. Ann. Stat. § 435.350 (West 2009). Plaintiff argues that the appraisers here would not "simply set the amount of the loss," but would have to "answer the complicated question of whether the aircraft can, in fact, be repaired." (Plaintiff's Opp., P. 5). Plaintiff claims their eventual decision would amount to a full and final conclusion of the

---

[7] As noted above, Hawker Beechcraft indicated that the aircraft could be repaired, i.e., returned to a safe and airworthy condition. (Sloan Letter, P. 2). Further, the parties agree that repair estimates calculated the damages as $3,462,709, well below the insured value of the plane. (Compl., ¶ 15; Defendant's Memo in Support, P. 1). To the extent unforeseen circumstances may increase the costs of repair, such calculations properly must be submitted to the appraisal process.

matters between the parties, and thus the process would be the functional equivalent of arbitration. (Id.). This argument is not persuasive for two reasons.

First, as noted above, because diminution in use, appearance, and/or value does not factor into the analysis, the dispute here centers on the "cost to repair." Under the terms of the Policy, appraisers are tasked with the duty to resolve such disputes. (See Policy, P. 16). The appraisal process would not fully and finally conclude the matters between the parties, however, and so the appraisal clause in question does not appear on its face to be an arbitration clause in disguise.

Second, "Missouri courts have found, both before and after the legislature adopted the Uniform Arbitration Act, that the Act does not determine the enforceability of appraisals." TAMKO Bldg. Products, Inc. v. Factory Mut. Ins. Co., 2009 WL 5216999 at *2 (E.D.Mo. Dec. 30, 2009) (citations omitted). Although state and federal courts are split on the issue, Missouri courts long have held that appraisal clauses are distinct from arbitration clauses and can be enforced. See Id.; see also Dworkin v. Caledonian Ins. Co., 226 S.W. 846 (Mo. 1920). The appraisal clause thus is valid and enforceable under Missouri law. TAMKO, 2009 WL 5216999 at *2.

### III. Is The Appraisal Provision Of The Policy Supported by Mutual Obligation?

Plaintiff next claims the appraisal clause is invalid as there exists no mutuality of obligation. (Compl., ¶¶ 32, 33; Plaintiff's Opp., PP. 6-7). The appraisal clause states, in pertinent part: "[Defendant] shall not be held to have waived any of its rights by any act relating to appraisal." (Policy, P. 16). Based on this provision, Plaintiff asserts that because the parties are not equally bound by the outcome of the appraisal, the clause is void for lack of mutuality.

Under Missouri state law, the essential elements of a contract are: "'1) competency of the parties to contract; 2) subject matter; 3) legal consideration; 4) mutuality of agreement; and 5) mutuality of obligation.'" Birkenmeier v. Keller Biomedical, LLC, 2010 WL 1555227 at *9

(Mo.App. Apr. 20, 2010) (quoting Dancin Dev. LLC v. NRT Missouri, Inc., 291 S.W.3d 739, 745 (Mo.App. 2009)). "The question of whether mutuality exists . . . is a question of whether the contract fails for lack of mutual consideration." Family Snacks of North Carolina, Inc., v. Prepared Products Co., 295 F.3d 864, 867 (8th Cir. 2002). There is no mutual consideration unless "an obligation rests upon each party to do or permit to be done something in consideration of the act or promise of the other; that is, neither party is bound unless both are bound." Sumners v. Service Vending Co., Inc., 102 S.W.3d 37, 41 (Mo.App. 2003) (internal quotations and citations omitted). However, "there is no requirement that each stipulation or term in a contract . . . must correspond with a stipulation or term binding upon [the other party.]" Family Snacks, 295 F.3d at 867 (citing Laclede Gas Co. v. Amoco Oil Co., 522 F.2d 33, 36 (8th Cir. 1975)).

The Supreme Court of Florida considered an argument similar to the one advanced by Plaintiff here in State Farm Fire and Cas. Co. v. Licea, 685 So.2d 1285 (Fla. 1996). In finding that the appraisal clause at issue was not void for lack of mutuality of obligation due to a "retained rights" provision, the Court held as follows:

> A challenge of *coverage* is exclusively a *judicial question*...If a court decides that coverage exists, the dollar value agreed upon under the appraisal process will be binding upon both parties. Thus, where there is a demand for an appraisal under the policy, the only "defenses" which remain for the insurer to assert are that there is no coverage under the policy for the loss as a whole or that there has been a violation of the usual policy conditions such as fraud, lack of notice, and failure to cooperate....For the reasons discussed, we hold that the appraisal clause is not void for lack of mutuality of obligation simply because of a retained rights clause, where we interpret the clause as retaining only the right to dispute the issues of coverage as to the whole loss, or whether the policy conditions have been violated as specified above.

Id. at 1287-88 (citation omitted).

Upon consideration, the Court finds the reasoning of the Licea Court persuasive. The Court thus finds the appraisal provision in the instant insurance policy was supported by mutuality of obligation, and so this portion of Plaintiff's argument must be rejected.

## CONCLUSION

For the reasons stated above, the appraisal provision in the insurance policy is enforceable. The appraisal will not necessarily resolve all of Plaintiff's claims, however, and so in the interests of judicial economy the Court will stay the entire case pending completion of the appraisal process. TAMKO, 2009 WL 5216999 at *4.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Global Aerospace, Inc.'s Motion to Stay this Litigation and Compel Appraisal (Doc. No. 4) is **GRANTED**, and this case is **STAYED** until further order. The parties shall notify the Court within seven (7) days of completion of the appraisal. Unless otherwise ordered, Defendant shall file its answer in this case no later than twenty-one (21) days after completion of the appraisal.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss (Doc. No. 4) is **DENIED**.

Dated this 23rd day of July, 2010.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE